UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| AVNET, INC.,<br><br>                Plaintiff,<br><br>   v.<br><br>AVANA TECHNOLOGIES INC.,<br><br>                Defendant. | Case No. 2:13-cv-00929-GMN-PAL<br><br>REPORT OF FINDINGS AND RECOMMENDATION<br><br>(Mtn for Final Judgment – Dkt. #25) |

This matter is before the court on Plaintiff Avnet, Inc.'s Motion for Final Judgment and Permanent Injunction by Default (Dkt. #25), which was referred to the undersigned for findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  No response to the Motion was filed, and the time for filing one has now run.  The court has considered the Motion and the supporting declarations.

**BACKGROUND**

Avnet filed its Complaint (Dkt. #1) on May 24, 2013, against Defendant Avana Technologies Inc.  Count I alleges trademark and service mark infringement/counterfeiting in violation of 15 U.S.C. § 1114(1).  Count II alleges trademark infringement, service mark infringement, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1125(a). Count III alleges deceptive trade practices in violation of NRS 598.0915.  Count IV alleges trademark and service mark infringement under Nevada common law.  Count V alleges unfair competition in violation of NRS 598A et seq., and Count VI alleges unjust enrichment. Avnet is a distributor of electrical, electronic, and computer components and equipment used in connection with telecommunications and data networks.  Complaint at ¶ 7.  Avnet also provides wireless computer software, hardware, and technology-related services.  *Id.*  It is the owner of all

rights, title, and interest in the following design mark (the "AV Mark")[1] which it used in connection with the products and services discussed above:

Avnet alleges Avana began using an identical or nearly identical design in connection with its telecommunications products and services, which are confusingly similar to Avnet's products and services, beginning around November 2012.  Complaint at ¶¶ 8, 22. Notwithstanding multiple cease and desist letters, Avana continued to infringe the AV Mark in connection with providing telecommunications products and services.  Complaint at ¶¶ 23-30; Exhibit 5 to Complaint.

The Complaint seeks the following relief: (a) judgment against Avana on its claims; (b) a permanent injunction prohibiting Avana from using the infringing design or any other design that would infringe in connection with products or services that are similar or related to Avnet's products and services and directing Avana to recall and destroy any material that uses the infringing design in connection with any products or services related to Avnet's products and services; (c) actual damages sustained as the result of Avana's infringing act, together with prejudgment interest, under 15 U.S.C. § 1117; (d) an accounting of Avana's profits resulting from its infringing conduct under 15 U.S.C.§ 1117; (e) treble damages under 15 U.S.C. § 1117 because Avana's conduct was willful, deliberate, and in bad faith; (f) attorney's fees, costs, and expenses under 15 U.S.C. § 1117; (g) damages for trademark infringement, service mark infringement, unjust enrichment, and unfair competition under Nevada's common law; (h) damages for unfair, unlawful, and deceptive business practices in violation of NRS 598.0915; (i)

---

[1] Avnet owns three United States registrations with the United States Patent and Trademark Office for the AV Mark.  *See* Complaint at ¶ 18.

an order that Avana be required to file a written report pursuant to 15 U.S.C. § 1116 setting forth in detail the manner and form of its compliance with the permanent injunction; and (j) any additional, other, or further relief deemed just and proper. *See* Complaint at 11:26-13:19.

The Clerk of Court issued Summons (Dkt. #4) to Avana on May 24, 2013. Plaintiff was unable to serve Avana, and in an Order (Dkt. #15) entered October 4, 2013, the court granted Avnet permission to serve Avana by publication and granted Avnet an extension of time through December 9, 2013, to do so. The Clerk of Court issued another Summons (Dkt. #18) on October 8, 2013. On December 9, 2013, Avnet filed Proof of Service by Publication (Dkt. #19). On February 4, 2014, the Clerk entered default against Avana on Avnet's Motion (Dkt. #20). *See* Clerk's Entry of Default (Dkt. #21).

**DISCUSSION**

**I.      Applicable Law & Analysis.**

**A.      Adequacy of Service of Process.**

As a preliminary matter, the court must determine whether the service of process was adequate. A federal court does not have jurisdiction over a defendant unless the defendant has been properly served. *See Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.,* 840 F.2d 685, 688 (9th Cir. 1988). Rule 4 of the Federal Rules of Civil Procedure governs service of process in a federal action and provides that an individual may be served by "following state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). In Nevada, Rule 4 of the Nevada Rules of Civil Procedure governs service of process. Parties must personally serve the summons and complaint upon a defendant; however, when personal service proves impossible, Rule 4(e)(1)(i) of the Nevada Rules of Civil Procedure provides that a party may move for service by publication. Here, the court allowed Avnet to serve Avana by publication, finding Avnet attempted service at seven different addresses on twenty-one separate occasions between May 29, 2013, and August 23, 2013. *See* Order (Dkt. #16). Avnet served Avana by publication in the Nevada Legal News, a daily newspaper of general circulation printed and published in Las Vegas, Nevada. *See* Affidavit of Publication by Rosalie Qualls, Assistant

1  Operations Manager at Nevada Legal News, attached to Proof of Service (Dkt. #19) as Exhibit
2  A. Publication of the Summons and Complaint began on October 10, 2013, and ended
3  November 7, 2013. *Id.* Service by publication is complete at the end of four weeks from the
4  first publication. *See* Nev. R. Civ. P. 4(e)(1)(iii). Thus, Avana was deemed served on November
5  7, 2013, and the court finds service of process was adequate.

6  **B.  Default Judgment.**

7  Obtaining a default judgment is a two-step process under Rule 55. *See Eitel v. McCool,*
8  782 F.2d 1470, 1471 (9th Cir. 1986); *see also* Fed. R. Civ. P. 55. First, the clerk must enter the
9  party's default. Fed. R. Civ. P. 55(a). Here, the Clerk entered a default against Avana on
10 February 4, 2014. *See* Clerk's Entry of Default (Dkt. #21). Second, the party seeking default
11 judgment must then petition the court for a default judgment. *See* Fed. R. Civ. P. 55(b)(2). The
12 grant or denial of a motion for the entry of default judgment is within the discretion of the court.
13 *See Lau Ah Yew v. Dulles,* 236 F.2d 415, 416 (9th Cir. 1956); *Warner Bros. Entm't Inc. v.*
14 *Caridi,* 346 F. Supp. 2d 1068, 107 (C.D. Cal. 2004). In determining whether to exercise its
15 discretion to enter a default judgment, the court considers the following factors: (1) the
16 possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim and the
17 sufficiency of the complaint, (3) the sum of money at stake in the action, (4) the possibility of a
18 dispute concerning material facts, (5) whether the default was due to excusable neglect, and (6)
19 the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the
20 merits. *See Eitel,* 782 F.2d at 1471-72. Once the default has been entered, the factual allegations
21 in a complaint are taken as true. *See Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir.
22 2002). Therefore, for purposes of deciding this Motion, the court accepts as true the well-pled
23 facts in the Complaint.

24 **1.  Possibility of Prejudice to the Plaintiff.**

25 The first factor favors default judgment where the plaintiff will suffer prejudice if default
26 judgment is not entered. *See McMillen v. J.C. Penney Co.*, 205 F.R.D. 558 (D. Nev. 2002).
27 Simply delaying the resolution of the case is not prejudicial under this standard. *See TCI Grp.*
28 *Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001). The standard is whether plaintiff's

1  ability to pursue the claim will be hindered. *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 462 (9th
2  Cir. 1984)). Avana has failed to appear since being served on November 7, 2013. As a result,
3  Avnet is left without a remedy if default judgment is not entered in its favor. This factor weighs
4  in favor of entering default judgment.

### 2. Merits of the Plaintiff's Substantive Claim & Sufficiency of the Complaint.

7  The second and third factors favor default judgment if Avnet has alleged facts sufficient
8  to state a claim upon which relief can be granted, in accordance with Rule 8(a) of the Federal
9  Rules of Civil Procedure. *See Eitel*, 782 F.2d at 1471; *Danning v. Lavine*, 572 F.2d 1386, 1389
10 (9th Cir. 1978). In making this determination, all factual allegations in the complaint should be
11 taken as true. *See See Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002); *Geddes*
12 *v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

13 Avnet's Complaint alleges claims for trademark/service mark infringement,[2] unfair
14 competition, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114 & 1125,
15 and under Nevada law. Complaint at ¶¶ 36-56, 61-65. Additionally, Avnet alleges Defendant
16 has engaged in deceptive trade practices in violation of NRS 598.0915. Complaint at ¶¶ 57-60.
17 Finally, Avnet has asserted an unjust enrichment claim. Complaint at ¶¶ 66-69. In the Motion
18 for Default Judgment, Avnet asserts that it has stated a claim on all these counts, but it only
19 addresses the trademark counterfeiting aspect of Count I and Count II, false designation of
20 origin.

21 To state a claim under 15 U.S.C. § 1125, a plaintiff must show: (a) it has a valid,
22 protectable trademark; and (b) defendant's use of the mark is likely to cause confusion. *See*
23 *Rearden LLC v. Rearden Commerce, Inc.,* 683 F.3d 1190, 1202-03 (9th Cir. 2012); *Applied Info.*
24 *Scis. Corp. v. eBay, Inc.,* 511 F.3d 966, 969 (9th Cir. 2007) (citing *Brookfield Comms.,* 174 F.3d
25 / / /

---

[2] The only difference between a trademark and a service mark is that a trademark identifies goods while a service mark identifies services. *See Kythera,* 998 F. Supp. 2d at 898 (citing *Chance v. Pac-Tel Teletrac, Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001) (internal citations omitted).

at 1047, 1053); *Reno Air Racing Ass'n v. McCord,* 452 F.3d 1126, 1134 (9th Cir. 2006) (citing *KP Perm. Make-Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 602 (9th Cir. 2005)).

### a. Valid, Protectable Trademark/Service Mark.

Typically, registration of a mark on the Principal Register in the Patent and Trademark Office constitutes prima facie evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration. *See Applied Info.*, 511 F.3d at 970. The registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration. *See Sengoku Works v. RMC Internat'l,* 96 F.3d 1217, 1219-20 (9th Cir. 1996) (internal citations omitted). To acquire ownership of a mark, a party must have been the first to use the mark in the sale of goods and services—i.e., it must have used the mark "in commerce." *See Rearden,* 683 F.3d at 1203; *Halicki Films, LLC v. Sanderson Sales & Mktg.,* 547 F.3d 1213, 1226 (9th Cir. 2008) (quoting *Sengoku,* 96 F.3d at 1219).

Avnet alleges it is the owner of the federally-registered AV Mark. *See* Complaint at ¶ 7, 18. It owns all the rights, title, and interest in the United States in the AV Mark and the goodwill associated with it. *Id.* at ¶ 7, 20. Avnet alleges that in November 1988 it adopted and began using the AV Mark in commerce in connection with its goods and services, and it has used the mark continuously since then. *Id.* at ¶¶ 12-19. Thus Avnet has sufficiently alleged it has a valid, protectable trademark/service mark in the AV Mark.

### b. Likelihood of Confusion.

This is the central element in a trademark infringement claim. *See GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *Official Airline Guides v. Goss,* 6 F.3d 1385, 1391 (9th Cir. 1993). In determining the likelihood of confusion, courts apply the following factors: (1) the similarity of the marks; (2) the strength of the mark; (3) evidence of actual confusion; (4) relatedness or proximity of the goods and services; (5) normal marketing channels used by the parties; (6) the type of goods and the degree of care the purchaser is likely to use; (7) the alleged infringer's intent in selecting the mark; and (8) evidence that either party may expand its business to compete with the other. *See Hokto Kinoko Co. v. Concord Farms,*

*Inc.,* 738 F.3d 1085, 1096 (9th Cir. 2013) (citing *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir. 1979)). In the Ninth Circuit, these factors are applied "flexibly," and courts focus on whether a reasonably prudent consumer is likely to be confused about the origin of the good or service bearing the mark. *Id.* (citing *Rearden,* 683 F.3d at 1214). Simply put, the "sine qua non of trademark infringement is consumer confusion." *Id.*

Here, Avnet has alleged that the AV Mark is identical or nearly identical in appearance to the infringing mark Avana used in connection with its business. *See* Complaint at ¶¶ 8, 22 and Exhibit 5 to Complaint (photographs showing infringing design on Avana's business van nearly identical to AV Mark). The AV Mark and the infringing design are sufficiently similar that a reasonable consumer is likely to be confused, and this factor favors Avnet.

Avnet asserts the AV Mark is strong. The Complaint alleges that Avnet is one of the world's largest distributors of electrical, electronic, and computer components and equipment, and it has been using the AV Mark since 1988. *Id.* at ¶¶ 7, 13. Avnet alleges that because of its long use and extensive advertising and promotion of the AV Mark, it is recognized and relied upon by the trade and the public as identifying Avnet's products and services and distinguishing them from others' goods and services. *Id.* at ¶ 17. A mark is strong if it is particularly unique or memorable, and fanciful marks (i.e., words or phrases invented soley to function as trademarks) receive a high level of trademark protection because they are inherently distinctive. *See Hokto,* 738 F.3d at 1096 (citing *Brookfield,* 174 F.3d at 1058). The Complaint depicts the AV Mark as stylized union of the letters A and V fitted together. *Id.* at ¶ 7. The court finds that because Avnet is one of the world's largest distributors of electrical, electronic, and computer equipment and has used the mark in commerce since 1988, this factor weighs in favor of Avnet.

The Complaint alleges the goods and services Avnet and Avana produce and offer are "confusingly similar," and photographic evidence of Avana's infringing design shows Avana is using the mark to sell telecommunications services similar to Avnet's. *Id.* at ¶ 8, 33 & Exh. 5. The Complaint alleges that Avana's telecommunications products and services are advertised and offered using the infringing design through the same marketing channels used by Avnet to the same or similar consumers of Avnet's products and services. *Id.* at ¶ 33. Where goods or

1  services of the alleged infringer are closely related to the goods or services of the owner of the
2  mark, consumers are more likely to be confused by the use of similar marks and "will mistakenly
3  assume there is an association between the producers of the goods [or providers of the services]
4  when no such association exists." *See R&R Partners, Inc. v. Tovar,* 447 F. Supp. 2d 1141, 1152
5  (D. Nev. 2006) (citing *Sleekcraft,* 599 F.2d at 350). Avnet has alleged the goods and services
6  provided by it and Avana are the same, and they are sold to the same class of purchasers, in the
7  same manner. The court finds these factors weigh in favor of Avnet.

8  Avnet argues that because telecommunications services are common and generally
9  inexpensive, customers will not execute a high degree of care in purchasing them. Thus,
10 unsuspecting customers will be easily misled. There is nothing in the Complaint to support these
11 assertions, and the court finds this factor is neutral.

12 Although Avnet has not alleged evidence of actual confusion, the Ninth Circuit has
13 recognized the difficulty of garnering such evidence and held that failure to show actual
14 confusion is not dispositive. *See Sleekcraft,* 599 F.2d at 353. The court finds the actual
15 confusion factor is neutral.

16 With regard to the intent factor, Avnet alleges that Avana's conduct in using the
17 infringing design was "knowing, willful, and deliberate." *Id.* at ¶ 56. Additionally, the
18 Complaint contends Avana's use of the infringing design "is an attempt to trade off the good
19 will, reputation, and selling power established by Avnet" using the AV Mark. *Id.* at ¶ 38. When
20 an alleged infringer knowingly adopts a mark identical or similar to another's mark, "courts will
21 presume an intent to deceive the public." *Hokto,* 738 F.3d at 1096 (citing *Official Airline*
22 *Guides,* 6 F.3d at 1394). Because the Complaint alleges Avana knowingly chose the infringing
23 design, this factor weighs in favor of Avnet.

24 Finally, with regard to the expansion factor, Avnet asserts that because the parties' goods
25 and services are closely related, "expansion of product lines is inevitable." Motion at 10:10-11.
26 This court finds this factor is neutral and relatively unimportant as the parties are already
27 admittedly marketing their products and services in the same market.

28 In light of all of the *Sleekcraft* factors, the court finds the Complaint has sufficiently

1  alleged a likelihood of confusion and has therefore stated a prima facie claim for false
2  designation of origin under the Lanham Act, 15 U.S.C. § 1125.

3  Trademark infringement under 15 U.S.C. § 1114(1) constitutes counterfeiting when the
4  alleged infringer uses a counterfeit mark, as defined in 15 U.S.C. § 1116(d). *See* 15 U.S.C.
5  § 1114(1)(a) and (b). A counterfeit mark is "one that is registered on the principal register in the
6  United States Patent and Trademark Office for such goods and services sold, offered for sale, or
7  distributed and that is in use, whether or not the person against whom relief is sought knew that
8  such mark was so registered." 15 U.S.C. § 1116(d). An infringer violates § 1116(d) when it
9  "applies a mark that is identical to the registered, genuine mark belonging to another on the same
10 type of goods for which the genuine mark is registered for use." *Louis Vuitton Malletier, S.A. v.*
11 *Akanoc Sol'ns, Inc.,* 658 F.3d 936, 946 (9th Cir. 2011). Here, Avnet has alleged the AV Mark
12 was registered and that Avana used an identical mark in connection with the sale of goods or
13 services in the telecommunications industry without Avnet's authorization. *See* Complaint at ¶¶
14 7, 21-35; Exh. E. Further, the Complaint alleges Avana intended to and likely did cause
15 confusion among consumers, deceiving them into believing Avana's services were authorized,
16 approved by, or sponsored by Avnet when they were not, and Avana intentionally traded off the
17 good will Avnet established in the AV Mark. *Id.* at ¶¶ 38-39, 41-42, 45. The court finds the
18 Complaint also states a valid trademark counterfeiting claim under 15 U.S.C. § 1114(1).

19 This factor weighs in favor of default judgment.

20 **3. Sum of Money at Stake in the Action.**

21 The fourth factor weighs against a default judgment when there is a substantial amount of
22 money involved. *See Eitel*, 782 F.2d at 1472. In evaluating this factor, the court must compare
23 the amount of money at stake to the seriousness of the defendant's conduct. *See PepsiCo, Inc. v.*
24 *Cal. Sec'y Cans,* 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). Avnet seeks statutory damages
25 pursuant to 15 U.S.C. § 1117(c) up to the statutory maximum amount of $2,000,000, and
26 attorney's fees and costs in the amount of $41,268.11. Given the substantial award requested by
27 Plaintiff, the court finds this factor weighs against a default judgment.
28 / / /

**4. Possibility of a Dispute Concerning Material Facts.**

The fifth factor weighs against a default judgment where there is a possibility of a dispute about material facts. *See Eitel*, 782 F.2d at 1471-72. Avana has not answered the Complaint, and nothing in the record indicates that any of the material facts are in dispute. Accepting the facts as pled in the Complaint as true, as the court must on entry of default, this factor weighs in favor of default judgment. *See Derek Andrew, Inc. v. Poof Apparel Corp.,* 528 F.3d 696, 698 (9th Cir. 2008).

**5. Whether the Default Was Due to Excusable Neglect.**

The sixth factor favors default judgment where default was not due to excusable neglect. *See Eitel*, 782 F.2d at 1472. A defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer. *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 815 (9th Cir. 1985), and *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir. 1986)). Avnet has demonstrated that it properly served Avana by publication with the Summons and Complaint and mailed a copy of the Motion for Default Judgment to Avana at seven different addresses. *See* Certificate of Service (Dkt. #25-2 at 3). Avana has received notice of this lawsuit, and its failure to appear is therefore willful. There is nothing in the record to show that Avana's default was due to excusable neglect. This factor favors entry of default judgment.

**6. The Strong Policy Favoring Decisions on the Merits.**

There is a strong policy in the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel*, 782 F.2d at 1472. However, the mere existence of Rule 55(b) indicates that this preference is not dispositive. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Avnet has no opportunity to try this case on the merits where Avana has repeatedly failed to respond or otherwise defend itself. Therefore, this factor weighs in favor of default judgment. After weighing all the *Eitel* factors, the court will recommend the entry of default judgment against Avana in favor of Avnet.

/ / /

/ / /


...


...

### C.     Damages.

### 1.     Statutory Damages.

Where infringement occurs, the Lanham Act provides that a trademark owner may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff; and (3) the costs of the action where a plaintiff has established trademark infringement. *See* 15 U.S.C. § 1117(a). As an alternative to seeking damages in the form of lost profits, a plaintiff may elect to receive an award of statutory damages in trademark actions involving the use of a counterfeit mark. *See* 15 U.S.C. § 1117(c). The purpose of § 1117 is to take the incentive out of counterfeiting and strengthen the civil remedies against counterfeiters. *See* S.Rep. No. 177, 104th Cong. (1995). In amending § 1117 to provide for recovery of statutory damages, Congress recognized that "a civil litigant may not be able to prove actual damages if a sophisticated, large-scale counterfeiter has hidden or destroyed information about his counterfeiting." *Id.* It is often the case that counterfeiters' records are "frequently non-existent, inadequate or deceptively kept in order to willfully deflate the level of counterfeiting activity actually engaged in, making proving actual damages in these cases extremely difficult if not impossible." *Id.*

Avnet seeks statutory damages pursuant to 15 U.S.C. § 1117(c), asserting that because Avana has refused to participate in this case, it is impossible to ascertain Avana's profits to calculate Avnet's actual damages under § 1117(a). The Ninth Circuit has permitted a plaintiff to recover statutory damages under § 1117(c) in similar situations. *See, e.g., Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,* 425 F.3d 708, 720-721 (9th Cir. 2005) (affirming district court's award of statutory damages where the defendant's use of the mark constituted counterfeiting as well as infringement). Statutory damages for trademark counterfeiting are particularly appropriate in default cases where there is a lack of information about a defendant's sales and profits. *See Microsoft Corp. v. Nop,* 549 F. Supp. 2d 1233, 1238 (E.D. Cal. 2008).

In order to invoke § 1117(c)'s monetary remedies against counterfeiting, Avnet must establish that: (a) Avana intentionally used a counterfeit mark in commerce; (b) Avana knew the mark was counterfeit; (c) Avana used the counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services; and (d) Avana's use was likely to confuse or

deceive. *See State of Idaho Potato Comm'n,* 425 F.3d at 721; *PepsiCo,* 238 F. Supp. 2d at 1175. Here, the mark used by Avana is counterfeit if it was a non-genuine mark identical to Avnet's mark; Avnet's mark is registered on the Principal Register in the United States Patent and Trademark Office for use on the same goods and services to which Avana applied the mark; Avnet's mark was in use; and Avana was not authorized to use the mark to sell telecommunications products and services. *See* 425 F.3d at 721. The Complaint alleges Avana used a non-genuine mark identical to the AV Mark, which is registered to be used and is used in connection with telecommunications, data networks, wireless computer software and hardware, and technology-related services. *See* Complaint at ¶¶ 7, 8, 18, 33. Avnet alleges Avana used the mark in connection with the same products and services for which the mark was registered without authorization. *See* Complaint at ¶¶ 7, 8, 9, 12-17, 22, 30, 32. Taking the factual allegations in the Complaint as true, the court finds the AV Mark is counterfeit for purposes of 15 U.S.C. § 1117(c).

Further, Avnet has alleged Avana intentionally used the counterfeit mark in commerce. *See* Complaint at ¶¶ 20, 30. Avana knew the mark was counterfeit. *Id.* at ¶¶ 23, 25, 27, 28, 34. Avana used the mark in connection with the sale of products and services. *Id.* at 8. Avana's use of the mark was likely to confuse or deceive. *Id.* at ¶¶ 8, 31, 41-45. Accepting the allegations in the Complaint as true, Avnet may recover § 1117(c) statutory damages of:

> (a) Not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (b) If the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).[3]

---

[3] Alternatively, the court could award Avnet damages under § 1117(a). The Federal Circuit has held that "an inability to show actual damages does not alone preclude a recovery under section 1117." *Bandag, Inc. v. Al Bolster's Tire Stores, Inc.,* 750 F.2d 903, 919 (Fed. Cir.

Avnet seeks $2,000,000, the statutory maximum amount of damages, or "such lesser amount as the Court deems just and equitable" to both repair the harm to Avnet and to deter future infringement by Avana and others. Motion at 15:10-12. The Complaint alleges Avana's conduct was "knowing, willful, and deliberate," and an allegation of willful trademark infringement is deemed true on default. *See* Complaint at ¶¶ 39, 49; *Dereck Andrew, Inc.,* 528 F.3d at 698. A finding of willfulness subjects a defendant to an enhanced statutory maximum liability of $2,000,000. 15 U.S.C. § 1117(c)(2).

District courts have wide discretion in determining statutory damages, subject only to the statutory minimum and maximum, and the Lanham Act does not provide guidelines to courts for determining an appropriate award. *See* 15 U.S.C. § 1117(c)(1); *Columbia Pictures Ind. Inc. v. Krypton Broad of Birmingham,* 259 F.3d 1186, 1194 (9th Cir. 2001); *Microsoft Corp. v. Mop,* 549 F. Supp. 2d 1233, 1237 (E.D. Cal. 2008) (citing *Louis Vuitton Malletier & Oakley, Inc. v. Veit,* 211 F. Supp. 2d 567, 583 (M.D. Pa. 2002)).

In fashioning the award of statutory damages, courts in this district have examined a wide range of factors, including the defendant's financial situation, naïveté, failure to resolve the trademark violations through settlement, and the extent of the infringement. *See, e.g., K&N Eng'g, Inc. v. Bulat,* 259 Fed. Appx. 994, 995 (9th Cir. 2007). The court has reviewed statutory damages awarded in this district within the last five years and finds that they range from $1,000 to $100,000. *See, e.g., N.Y.-N.Y. Hotel & Casino, LLC v. Katzin,* No. 2:09-cv-02139, 2010 WL 4386497, at *5 (D. Nev. Oct. 27, 2010) (awarding $1,000 where defendant's conduct was not willful, and the only damage was that some customers might use the infringing domain name to

---

1984). Section 1117 gives courts considerable discretion to award damages based on equitable considerations, providing, "If the court shall find that the amount the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances. 15 U.S.C. § 1117(a). In fashioning such a remedy, the court should consider the circumstances of the case, including the nature of the infringing actions and the intent with which they were motivated. *Id.* at 917-18. In *Bellagio v. Denhammer*, for example, District Judge Hunt awarded $1000 nominal damages where plaintiff could not specify its actual damages from defendant's use of an infringing domain name. In awarding this amount, he found defendant's actions were "particularly malicious" because it refused to transfer the infringing domain names to plaintiff and instead transferred ownership of them to a third party in Denmark and "very likely" profited from the sale of plaintiff's trademark. *See Bellagio,* No. CV-S-00-1475, 2001 WL 34036599, at *5 (D. Nev. July 10, 2001).

link to plaintiff's competitors); *Two Plus Two Pub., LLC v. Boyd,* No. 2:09-cv-02318, 2012 WL 724678, at *5 (D. Nev. Mar. 1, 2012) (awarding $25,000 as statutory damages under § 1117(d) where defendant acted with bad faith intent to profit, but plaintiff had "scant evidence" of defendant's success); *Carpet Cops, Inc. v. Carpet Cops, LLC,* No. 3:11-cv-00561, 2012 WL 3929783, at *7 (D. Nev. Sept. 6, 2012) (awarding $2500 statutory damages where defendant acted willfully, but plaintiff did not produce evidence to show how defendant profited from infringement and had opened new company that did not infringe); *Boyd Gaming Co. v. King Zulu, LLC,* No. 2:12-cv-00016, 2012 WL 5204737, at *3 (D. Nev. Oct. 25, 2012) (awarding $10,000 statutory damages under § 1117(d)).

The majority of courts in this district have not awarded the statutory maximum amount of damages where plaintiff also seeks a permanent injunction enjoining any future infringement. *See, e.g., Nevada Property 1 LLC v. Newcosmopolitanias Vegas.com,* No. 2:12-cv-00866, 2013 WL 167755, at *3 (D. Nev. Jan. 15, 2013) (declining to award statutory maximum to effectuate deterrence where plaintiff also sought permanent injunction; *Teller v. Dogge,* No. 2:12-cv-00591, 2014 WL 4929413, at *4 (D. Nev. Sept. 30, 2014) (awarding $15,000 statutory damages for copyright infringement under 17 U.S.C. § 504 and noting that because plaintiff also sought a permanent injunction, a maximum statutory damages award would be unnecessary to deter defendant's future conduct). *But see Toyo Tire and Rubber Co., Ltd. v. Toyama Tyre Corp., Ltd.,* No. 2:13-cv-02062, 2014 WL 4987876, at * (D. Nev. Oct. 6, 2014) (awarding maximum statutory damages of $100,000 under § 1117(d) to deter future infringement).

The court finds an award of statutory damages is appropriate because Avnet cannot specify the amount of its damage. In reaching this conclusion, the court has considered the nature of Avana's infringing actions, the willfulness and intent with which it was likely motivated. The court has also considered evidence that Avnet was willing to release Avana from any liability for use of the mark if Avana simply agreed, in writing, to cease any use of the mark. *See* January 14, 2013 cease and desist letter attached as Exhibit 6 to Plaintiff's complaint. Although the court has found Avana willfully infringed/counterfeited Avnet's federally-registered trademark, Avnet offers no factual rationale to award the maximum $2,000,000 in

1  damages. It has not presented evidence that Avana sold or offered its products or services to a
2  wide market, and the court has no information about the extent of Avana's sales when using the
3  AV Mark, how long Avana used the mark, or the effect, if any, Avana's use had on Avnet's
4  sales. Avnet has only provided evidence that Avana used AV Mark on two vehicles in
5  connection with the sale of telecommunications and wireless communications products and
6  services. *See* Exh. 5 to Complaint. The Complaint alleges Avnet first learned of Avana's use of
7  the infringing mark in November 2012. Complaint at ¶ 7. Additionally, Avnet alleges Avana
8  willfully continued to use the AV Mark[4] after receiving Avnet's January 14, 2013, cease and
9  desist letter and failed to respond to a second cease and desist letter sent February 22, 2013, or
10 follow-up telephonic communication with Gabriel Avana, who claimed he had not received
11 either letter. *Id.* at ¶ 27. The court finds that an award of $25,000, coupled with a permanent
12 injunction is sufficient to deter future infringing conduct by Avana and others.

13              **2.       Injunctive Relief.**

14        Avnet seeks injunctive relief to permanently enjoin Avana from the AV Mark in
15 connection with the sale and offer for sale of infringing goods and services. Injunctions are an
16 authorized remedy for trademark infringement pursuant to 15 U.S.C. § 1116(a); *see Craigslist,*
17 *Inc. v. Naturemarket, Inc.,* 64 F. Supp. 2d 1039, 1061-62 (N.D. Cal. 2010). "Injunctive relief is
18 the remedy of choice for trademark [cases because] there is no adequate remedy at law for the
19 injury caused by defendant's continuing infringement." *Century 21 Real Estate Corp. v.*
20 *Sandlin,* 846 F.2d 1175, 1181 (9th Cir. 1988); 15 U.S.C. § 1116. A permanent injunction is
21 appropriate where it is "not absolutely clear" that a defendant's infringing activities have
22 permanently stopped. *See PepsiCo, Inc. v. California Sec'y Cans,* 238 F. Supp. 2d 1172, 1178-
23 79 (C.D. Cal. 2002). They are routinely granted in cases where a defendant has not appeared in
24 the action at all. *See Castworld Prods.,* 219 F.R.D. at 502; *PepsiCo,* 238 F. Supp. 2d at 1178.
25 This is because the defendant's failure to appear to answer serious trademark claims against it
26 suggests that the plaintiff would continue to be exposed to the risk of continuing harm by the

---

28        [4] All of the Complaint allegations about Avana's use of the mark are made on information and belief.

- 15 -

defendant's misuse of the plaintiff's mark. *Jackson v. Sturkie,* 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003); *Castworld Prods.,* 219 F.R.D. at 502.

Avnet is entitled to a permanent injunction where it shows that: (a) it has suffered an irreparable injury; (b) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (c) considering the balance of the hardships between Avnet and Avana, an equitable remedy is required; and (d) the public interest is served by the entry of a permanent injunction. *See eBay, Inc. v. MercExchange, LLC,* 547 U.S. 388, 391 (2006); *Herb Reed Enterprises, LLC v. Florida Entertainment Mgmt., Inc.,* 736 F.3d 1239, 1249 (9th Cir. 2013).

Avnet has alleged in the Complaint that Avana has infringed the AV Mark by willfully using it to advertise the sale of products and services in the telecommunications industry. In addition, Avana's failure to respond or otherwise appear does not assure that it has stopped infringing/counterfeiting the AV Mark. Unless enjoined, Avana's infringement and counterfeiting will continue to cause Avnet irreparable harm. *See* Complaint at ¶ 30. Therefore, Avnet is entitled to permanent injunctive relief, and the court will recommend the permanent injunction enjoining Avana from infringing/counterfeiting the AV Mark.

### 3. Award of Attorney's Fees.

In "exceptional cases," the court may also award reasonable attorney fees to the prevailing party. *See* 15 U.S.C. § 1117(a). There is a split of authority among the circuits and the district courts in the Ninth Circuit about whether the Lanham Act authorizes an award of attorney's fees pursuant to § 1117(a) when the prevailing party elects statutory damages under subsection (c) instead of actual damages under subsection (a). *Compare K&N Eng'g, Inc. v. Bulat,* 510 F.3d 1079, 1082 (9th Cir. 2007) (no attorney fees under (b) when seeking statutory damages under (c)); *Symantec Corp. v. Logical Plus, Inc.,* No. C 06-7963 SI, 2010 WL 2330388, at *3 n.6 (N.D. Cal. June 4, 2010) (no attorney fees under (a) or (b) when electing statutory damages under (c)); *with Louis Vuitton Malletier S.A. v. LY USA, Inc.,* 676 F.3d 83, 111 (2d Cir. 2012) (distinguishing *K&N* and permitting attorney's fees under (a) when electing statutory damages under (c)); *Ploom, Inc. v. Iploom, LLC,* No. 13-cv-05813 SC, 2014 WL 1942218, at *8

(N.D. Cal. May 12, 2014) (finding Second Circuit's *Louis Vuitton* opinion persuasive on availability of permissive attorney's fees under (a)). The Ninth Circuit has not decided whether electing statutory damages under § 1117(c) precludes an award of attorney's fees for exceptional cases under the last sentence of § 1117(a). *K&N*, 510 F.3d at 1082 n.5. Cases after *K&N* in this circuit generally hold that electing statutory damages bars attorney's fees under either § 1117(a) or (b) because the Lanham Act only allows recovery of attorney's fees where a plaintiff elects actual damages and not statutory damages. *See, e.g., Stanley Black & Decker, Inc. v. D&L Elite Inv., LLC,* No. C 12-04516, 2014 WL 3738327, at *18 (N.D. Cal. June 20, 2014) (collecting cases). Avnet has not addressed this issue in its papers.

In addition, Avnet has not complied with Local Rule 54-16(b), which requires that a motion for attorney fees include a brief summary of the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case;[5] (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. LR 54-16; *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 (1976); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). LR 54-16(d) explicitly provides that failure to provide the information required by LR 54-16(b) in a motion for attorneys' fees "constitutes a consent to the denial of the motion." LR 54-16(d). Here, neither the Declaration of Erin M. Hickey (Dkt. #25-2), the Declaration of Jonathan W. Fountain (Dkt. #25-1), nor the Motion for Default address any of these factors. Therefore, it will be recommended that Plaintiff's request for attorneys' fees be denied.

/ / /

---

[5] This factor has been called into question by the Supreme Court's ruling in *City of Burlington v. Dague*, 505 U.S. 557, 561-564, 112 S. Ct. 2638, 120 L. Ed. 2d 449 (1992). *See also Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) (suggesting *Dague* casts doubt on the relevance of "undesirability" to the fee calculation).

**4.     Award of Costs.**

Avnet seeks an award of costs pursuant to 15 U.S.C. § 1117(a)(3). As set forth above, it is unsettled whether an award of costs under § 1117(a) is precluded where a prevailing party has elected to recover statutory damages under § 1117(c). Avnet relies on an unpublished decision from this district to support its request for costs, but the court finds that case inapposite because there, the plaintiff was awarded damages pursuant to § 1117(d), which allows for statutory damages for violations of 15 U.S.C. § 1125(a). *See Nev. Prop. 1 LLC v. Newcosmopolitanlasvegas.com,* No. 2:12-cv-00866, 2013 WL 167755, at *5 (D. Nev. Jan. 13, 2013). In light of the split of authority in this circuit, the court will not award costs under § 1117(a)(3).

## II.     Conclusion.

Based upon the foregoing, the court finds that Avnet's service of process on Avana was adequate. The Clerk of Court entered the default judgment against Avana on February 4, 2014. Weighing all the *Eitel* factors, this court finds that entry of the default judgment is appropriate.

For the reasons stated above,

**IT IS RECOMMENDED:**

1. Plaintiff's Motion for Default Judgment (Dkt. #25) be GRANTED IN PART as follows:

    (a)     Plaintiff be awarded statutory damages in the amount of $25,000.

    (b)     A permanent injunction be entered pursuant to 15 U.S.C. § 1116 enjoining Defendant and its officers, agents, servants, employees, attorneys, and all persons, corporations, business entities, and other associations of persons who are in active concert or participation with Defendant, are hereby permanently enjoined and restrained from, directly or indirectly: using the Infringing Design, or any other word, words, phrases, symbols, logos, or combination of words or symbols that would create a likelihood of confusion, mistake and/or deception with the AV Design Mark, in commerce in connection with any products or services similar or related to

the Avnet Products and Services; and pursuant to 15 U.S.C. § 1118, Defendant and its officers, agents, servants, employees, attorneys, and all persons, corporations, business entities, and other associations of persons who are in active concert or participation with Defendant, are hereby ordered to deliver up to Plaintiff for destruction all materials containing the Infringing Design, or any other word, words, phrases, symbols, logos, or combination of words or symbols, that would create a likelihood of confusion, mistake or deception with the AV Design Mark, in connection with any products or services similar or related to the Avnet Products and Services.

2. Plaintiff's Motion for Default Judgment be DENIED with respect to attorneys' fees and costs.

3. Any request for relief not specifically addressed be DENIED.

Dated this 3rd day of December, 2014.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE